

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHELLE WELCHER-BUTLER, )
)
Plaintiff, )
) No. 13 CV 2996
v. )
) Hon. Charles R. Norgle
PATRICK R. DONAHOE,[1] Postmaster General, )
)
Defendant. )

**OPINION AND ORDER**

Plaintiff Michelle Welcher-Butler ("Plaintiff"), proceeding pro se, sues her employer, Defendant Patrick R. Donahoe (now Megan J. Brennan), Postmaster General ("Defendant"), for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Before the Court is Defendant's motion for summary judgment. For the following reasons, the motion is granted.

**I. BACKGROUND**

**A. Local Rule 56.1**

The facts of this case are largely undisputed, in part because Plaintiff failed to comply with the requirements of the Northern District of Illinois Local Rule 56.1. The Court notes that Defendant properly served Plaintiff with a Notice to Pro Se Litigant Opposing Motion for Summary Judgment, which also explains the procedural rules for summary judgment. See N.D. Ill. L.R. 56.2. As discussed below, the Court accepts as true all material facts submitted by Defendant and not properly disputed by Plaintiff.

---

[1] On February 1, 2015, Megan J. Brennan became Postmaster General of the United States Postal Service. Therefore, Megan J. Brennan is automatically substituted for Patrick R. Donahoe as the named Defendant pursuant to Federal Rule of Civil Procedure 25(d).

"District courts have broad discretion to enforce and require strict compliance with their local rules." Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 655 (7th Cir. 2011) (citing Elustra v. Mineo, 595 F.3d 699, 710 (7th Cir. 2010)). "[C]ourts are required to give liberal construction to pro se pleadings . . . [but] pro se litigants are not excused from compliance with procedural rules." Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir. 2008) (citations omitted).

Pursuant to Local Rule 56.1, a litigant opposing a motion for summary judgment must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). In addition, a litigant opposing a motion for summary judgment must file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(C).

Plaintiff did not respond to Defendant's statement of facts; nor did she file her own statement of additional facts. Instead, Plaintiff merely filed a twenty-page response memorandum, which, in and of itself, violated the local rule prohibiting the filing of a brief in excess of fifteen pages without first seeking leave of Court. See N.D. Ill. L.R. 7.1. To the extent that Plaintiff attempts to dispute Defendant's facts or submit her own facts through her response memorandum, the Court rejects such proposed facts due to Plaintiff's noncompliance with the local rule. See Cichon v. Exelon Generation Co., LLC, 401 F.3d 803, 810 (7th Cir. 2005) (finding that the district court did not abuse its discretion when it ignored facts proposed within

the plaintiff's response to the defendant's statement of facts, as opposed to in a separate statement of facts in accordance with Local Rule 56.1).

Because Plaintiff did not respond to Defendant's properly supported statement of material facts, Defendant's facts are deemed admitted. See N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); see also Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission." (internal quotation marks and citation omitted)).

**B. Facts**

The following facts are undisputed. Plaintiff began working for the postal service in 1986. She began as a mail carrier in Chicago, and, in October of 1998, she was promoted to customer service supervisor. In 2007, Plaintiff was transferred from Chicago to the Oak Forest Post Office, where she worked as a customer service supervisor until her removal on March 28, 2011.

In August of 2008, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint against Keith Pugh, a manager in the Chicago District of the Postal Service, and Lorraine Diggs-Brown ("Diggs-Brown"), then-postmaster of the Oak Forest Post Office. The EEO complaint against Diggs-Brown related to a proposed letter of warning that Diggs-Brown issued to Plaintiff for failure to report an on-the-job vehicle accident in which she was involved. The decision to issue the letter of warning was upheld on November 20, 2008.

Diggs-Brown issued Plaintiff another proposed letter of warning in June of 2009, which was upheld on August 26, 2009. This letter cited Plaintiff for misconduct, including an improper

3

entry of overtime hours on behalf of another employee, and various reporting and documentation errors which led to the loss of significant amounts of cash and postage stamp stock from a safe located on the premises. Following this disciplinary action, Plaintiff once again filed an EEO complaint against Diggs-Brown in January of 2010, which was then consolidated with her previous complaint from August of 2008. These complaints were dismissed pursuant to a settlement agreement in August of 2010, whereby Plaintiff received forty hours of sick leave.

On July 31, 2010, Diggs-Brown left the Oak Forest Post Office, and was replaced by the new postmaster, Demetria Charrier ("Charrier"). Upon arriving at the Oak Forest Post Office, Charrier was not personally familiar with Diggs-Brown, Plaintiff, or the EEO complaints. As part of her duties as postmaster of the Oak Forest Post Office, however, Charrier was responsible for authorizing the additional forty hours of sick leave which Plaintiff had received as part of her settlement agreement.

In September of 2010, Charrier issued Plaintiff a proposed letter of warning for failure to perform her duties and failure to follow instructions which led to the improper handling and six-week delay of first-class mail. Plaintiff's misconduct could have resulted in a fourteen-day suspension. Plaintiff received an official letter of warning for this incident on October 10, 2010. Following this disciplinary action, Plaintiff engaged in a series of misconduct during the peak holiday mail season for the post office, which begins the day after Thanksgiving and continues through the Christmas holiday.

On December 15, 2010, Charrier instructed Plaintiff to oversee the delivery of packages from a third-party carrier which had arrived at the station, but the carrier was unable to unload because a postal dispatch truck was blocking the way. Instead of overseeing the intake of the packages, once Charrier left for the day, Plaintiff turned the truck away and refused the shipment

4

saying that it had arrived too late. Plaintiff failed to report this refused shipment to the appropriate channels. As a result of Plaintiff's actions, the packages were delivered the following day, which resulted in double the amount of parcels for the mail carriers, who then incurred overtime hours making the extra deliveries.

On December 20, 2010, Plaintiff failed to arrange for the delivery of a tub of "hot case" mail to mail carriers on their routes. Hot case mail is flat mail in tubs during the holiday season that needs to be sorted and distributed for local delivery. On December 13, 2010, Charrier met with Plaintiff and specifically told her that if mail carriers left for their routes before the hot case mail was sorted, Plaintiff was to arrange for the mail to be delivered to the mail carriers while out on their routes. Plaintiff's failure to ensure the delivery of this hot case mail led to another delay of mail during the peak holiday season. Additionally, Plaintiff once again failed to report this delay to the proper channels in accordance with Postal Service policy.

On December 21, 2010, Charrier found hundreds of unsorted periodicals stacked five feet high that were supposed to be delivered that day. Upon further investigation, Charrier discovered that Plaintiff had arranged to have the delivery date in the computer and the color codes of the periodicals changed so that the delivery date was not until the following day, on December 22, 2010. Plaintiff failed to report this delay in the computer as she was required to do.

Shortly thereafter, on December 24, 2010, Charrier had a pre-disciplinary interview with Plaintiff to discuss her misconduct and the delays of mail on December 15, 20, and 21. During the interview, Plaintiff refused to answer any questions. Subsequently, on January 31, 2011, Charrier issued Plaintiff a proposed notice of removal for: "(1) Failure to Follow Instructions Resulting in Unauthorized Delay of Mail; (2) Unacceptable Conduct as Evidenced by Failure to

5

Report Delayed Mail by Changing Delivery Commitment Date; and (3) Failure to Perform Duties as Assigned Resulting in Unauthorized Delay of Mail." Local Rule 56.1 Statement of Material Facts in Support of the Def.'s Mot. for Summ. J. ¶ 18. According to the notice, Plaintiff could either request mediation or respond to the charges to Patrick Kavanaugh ("Kavanaugh"), the manager of post office operations for the central district. Kavanaugh became the manager of post office operations for the central district in January of 2011. Kavanaugh did not know Plaintiff prior to her proposed notice of removal, and he was not aware of her earlier EEO complaints against Diggs-Brown.

Plaintiff chose to respond to the notice, and, through her representative, Nancy Wesley, she sent Kavanaugh a written response to the proposed removal on March 1, 2011. On March 15, 2011, Plaintiff and her representative met with Kavanaugh to discuss the proposed notice of removal. At that meeting, Plaintiff claimed that she had properly reported all of the delayed mail, however, Kavanaugh could find no evidence to support her statements. Kavanaugh then gave Plaintiff one day to provide him with copies of the reports that she allegedly filed. Plaintiff failed to provide the appropriate documentation. On March 28, 2011, Kavanaugh issued Plaintiff a letter of decision, removing her from her employment at the post office effective that day. In his letter of decision, Kavanaugh found that all three charges were proven by supporting evidence, and that each was independently sufficient to warrant Plaintiff's removal.

On April 18, 2011, Plaintiff filed a mixed case EEO/Merit Systems Protection Board ("MSPB") complaint against Charrier and Kavanaugh. In her complaint, Plaintiff alleged that her removal was the result of age discrimination and retaliation for her prior EEO complaints against Diggs-Brown. MSPB dismissed her complaint. On April 22, 2013, Plaintiff filed the instant lawsuit against Defendant, her former employer, alleging discrimination on the basis of

race and gender, and retaliation in violation of Title VII. On September 6, 2013, the Court dismissed Plaintiff's race and gender discrimination claims for failure to raise them first before the EEO. Plaintiff's sole remaining claim is for retaliation. Defendant's motion for summary judgment is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted).

The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Id. But before the nonmoving party "can benefit from a favorable view of evidence, [s]he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). "Summary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013) (quoting Celotex Corp., 477 U.S. at 322).

## B. Retaliation

Title VII provides that, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). To defeat a motion for summary judgment on a retaliation claim, Plaintiff must provide "sufficient evidence of retaliation through either a direct or indirect method." Silverman v. Bd. of Educ., 637 F.3d 729, 740 (7th Cir. 2011). Plaintiff ostensibly alleges retaliation through both the direct and indirect method.

### *1. Direct Method*

Under the direct method, Plaintiff must show: "(1) that [s]he engaged in activity protected by the statute; (2) that h[er] employer took an adverse employment action against h[er]; and (3) that there is a causal connection between the plaintiff's protected activity and the adverse employment action." O'Leary v. Accretive Health, Inc., 657 F.3d 625, 630 (7th Cir. 2011) (citations omitted). Plaintiff may show a causal nexus as required by the third factor either through direct evidence, which is akin to an admission, or "through a convincing mosaic of circumstantial evidence that would permit the same inference without the employer's admission." Id. (internal quotation marks and citations omitted).

The first two factors are not disputed. Plaintiff engaged in protected activity when she filed EEO complaints against her former supervisor, Diggs-Brown, in August of 2008 and January of 2010, and Plaintiff suffered an adverse employment action when she was terminated by Kavanaugh (following Charrier's notice of removal) on March 28, 2011. Defendant, however, argues that Plaintiff fails to make a causal connection between her EEO complaints

8

against Diggs-Brown, and her termination by Kavanaugh and Charrier. Notably, neither Charrier nor Kavanaugh worked with Plaintiff at the time of her EEO complaints against Diggs-Brown. Additionally, neither individual was aware of Plaintiff's complaints against her former supervisor upon entering their respective positions. Because Charrier and Kavanaugh were not personally aware of the protected activity at the time of her termination, Plaintiff fails to show the requisite causal connection. See Tomanovich v. City of Indianapolis, 457 F.3d 656, 670 (7th Cir. 2006) (finding that the plaintiff's retaliation claim failed under both the direct and indirect method because he failed to present sufficient evidence that the defendant knew of his protected activities). Accordingly, Plaintiff fails to provide sufficient evidence through the direct method to survive summary judgment on her retaliation claim.

### 2. Indirect Method

"The indirect method of proof employs the burden-shifting framework first articulated in the Supreme Court's decision in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973)." Id. at 630-31. To establish a prima facie case of retaliation under the indirect method of proof, Plaintiff must show that she: "(1) engaged in a statutorily protected activity; (2) met [her] employer's legitimate expectations; (3) suffered an adverse employment action; and (4) [was] treated less favorably than similarly situated employees who did not engage in statutorily protected activity." Alexander v. Casino Queen, Inc., 739 F.3d 972, 983 (7th Cir. 2014) (internal quotation marks and citations omitted). "If plaintiff[] can establish a prima facie case, the burden then shifts to [Defendant] to produce a non-discriminatory reason for its employment action." Id. (citing Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 785 (7th Cir 2007)). "If [Defendant] meets its burden of production, then plaintiff[] must demonstrate that

[Defendant's] proffered reason is pretextual." Id. (internal quotation marks and citations omitted).

Defendant argues that Plaintiff fails to meet her burden to establish a prima facie case of retaliation. The Court agrees. Specifically, Plaintiff fails to provide evidence of any similarly situated employees who did not engage in protected activity but were treated more fairly. Additionally, Plaintiff fails to show that she was meeting Defendant's legitimate employment expectations. Indeed, the undisputed facts show the opposite. Far from meeting expectations, Plaintiff engaged in a series of misconduct prior to her termination, including the three infractions which occurred in December of 2010 during Defendant's peak holiday mail season. Therefore, Plaintiff fails to show retaliation through the indirect method of proof.

## III. CONCLUSION

Because Plaintiff failed to meet her burden of proof to establish retaliation through either the direct or indirect method, Defendant is entitled to summary judgment on this claim. For the foregoing reasons, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: February 10, 2015